IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

```
BRUCE KITTS,              )
                          )
Plaintiff,                )
                          )
    v.                    )    NO. 3:06-CV-708
                          )
MENARDS, INC.,            )
                          )
Defendant.                )
```

### OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss or Compel Arbitration and Stay Action (D.E. # 4) filed by Menards, Inc., on December 7, 2006. For the reasons set forth below, the defendant's motion to compel arbitration and stay proceedings is **GRANTED.** The parties shall proceed with arbitration as provided by their agreement. All proceedings are **STAYED** pending further order of the Court. The Clerk is **ORDERED** to close the case, subject to the right of either party to seek relief from the stay.

The plaintiff, Bruce Kitts ("Plaintiff"), filed this case against the defendant, Menards, Inc. ("Menards"), pursuant to Title 38 U.S.C. § 4301 *et seq.* ("USERRA") alleging unlawful retaliation and reprisal against him for his membership in the United States Military Service. (*See* Complaint ¶1 (D.E. # 1).) Plaintiff began working for Menards at its Mishawaka store on March 23, 2004. (Complaint ¶2.) Continuing throughout his employment at Menards,

Plaintiff was a member of the uniformed services in the Naval Reserve Unit. (Complaint ¶5.) After a series of promotions and pay increase from Menards, Plaintiff alleges that in September 2005 he overheard his boss, the store's General Manager, remark that "Kitts Naval Reserve Service obligations are a problem to the extent that it is probably best that Kitts no longer work for Menards." (Complaint ¶¶8-12, 19-20.) On October 10, 2005, the General Store Manager terminated Plaintiff's employment. (Complaint ¶¶19-20.)

When applying for employment, Kitts signed the following agreement to arbitrate:

> I agree that all problems, claims, and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. Problems, claims, or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act, and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common law.

(*See* Employee Agreement ¶6 (D.E. # 5).) The agreement specifies that it is "subject to the Federal Arbitration Act" and that all claims covered by the agreement "shall be resolved by binding arbitration with the American Arbitration Association." *Id.*

The currently pending issue is whether Plaintiff's claim must be arbitrated pursuant to this agreement. Plaintiff concedes that his USERRA claim is covered by the arbitration agreement and that the Federal Arbitration Act ("FAA") applies. The parties disagree on whether Congress expressed its intent to preclude arbitration in the text of USERRA.

LAW

Congress enacted the FAA, 9 U.S.C. § 1 *et seq.*, in 1947 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). According to section 2 of the FAA "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also allows a stay of proceedings where an issue therein is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to arbitrate under a written agreement, § 4. The Supreme Court has interpreted these provisions to "manifest a 'liberal

federal policy favoring arbitration agreements.'" *Gilmer,* 500 U.S. at 25 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)).

The FAA generally requires a court to grant a motion to compel arbitration where the court finds (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement," and (3) "a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements," including arbitration agreements found in employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The FAA also compels arbitration of a wide range of statutory violations, including federal employment discrimination claims. *See, e.g., Gilmer,* 500 U.S. at 35 (compelling arbitration of claims under the Age Discrimination in Employment Act ("ADEA") under a broadly-worded arbitration clause).

Nevertheless, a court need not compel arbitration if "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). "If such an intention exists, it will be discoverable in the text of [USERRA], its legislative history, or an 'inherent conflict' between arbitration and [USERRA's] underlying purposes. *See Gilmer,* 500 U.S. at 26.  The burden is on Kitts "to show that Congress

intended to preclude a waiver of a judicial forum" for USERRA claims. *Id.* "Throughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24). Courts must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc., v. Byrd,* 470 U.S. 213, 221. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

DISCUSSION

USERRA provides several procedures to enforce the substantive rights it provides, including non-judicial remedies. *See, e.g.,* 38 U.S.C. §§ 2421-2426. Plaintiff, however, relies on the provision providing federal jurisdiction: "In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323(b)(3). Plaintiff contends that this section grants him the "right to bring an action in any federal court." (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or Compel Arbitration and Stay Action at 3 (D.E. # 8)).

USERRA also provides an anti-waiver provision: "This chapter supersedes any . . . contract [or] agreement . . . that reduces, limits or eliminates in any manner any right or benefit provided by

this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b). Plaintiff submits that reference to a contract or agreement that "reduces, limits, or eliminates, in any manner any right . . . including establishment of additional prerequisites to the exercise of any such right" includes the arbitration agreement and that the broad reference to any right includes the "the right to file in any federal court" based on § 4323.

In his three page opposition to the currently pending motion, Plaintiff argues that his interpretation is the only logical one and recommends this Court follow *Lopez v. Dillard's, Inc.*, 382 F. Supp. 2d 1245 (D. Kan. 2005) and *Breletic v. Caci, Inc.-Federal*, 413 F. Supp. 2d 1329 (N.D. Ga. 2006) as precedent. In both of these cases, the courts found that USERRA was intended to preempt agreements to arbitrate. *Lopez*, 382 F. Supp. 2d at 1247 ("Hence, the plain language of 38 U.S.C. § 4302(b) requires that the arbitration agreement be superseded by the USERRA"); *Breletic*, 413 F. Supp. 2d at 1337 ("Thus, though the parties may have intended for Breletic's claims to fall within the scope of the arbitration agreements, the USERRA precludes the arbitration of those claims"). They reasoned that while an arbitration agreement does not require a person to relinquish any substantive rights, it does relinquish procedural rights to bring the action in federal court. *Lopez*, 382

-6-

F. Supp. 2d at 1248; *Breletic*, 413 F. Supp. 2d at 1337. Under these courts' interpretation, this is prohibited under § 4323 of USERRA. *Id.*

These opinions are "not binding on the circuit, or even on other district judges in the same district." *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987). Moreover, they are "entitled to no more weight than their intrinsic persuasiveness merits." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

At least three other courts have compelled arbitration when faced with an argument similar to Plaintiff's. *See Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 677 (5th Cir. 2006); *Landis v. Pinnacle Eye Care, LLC,* NO. 3:06-CV-569, 2007 WL 2668519 (W.D. Ken. September 6, 2007); *Kline v. City of Lansing*, No. 5:06cv142, 2007 WL 1521187 (W.D. Mich. May 21, 2007). These courts interpreted USERRA's reference to "any right" to apply only to substantive rights and held that § 4302 does not apply to arbitration agreements that waive filing a claim in a federal forum. *Garrett*, 449 F.3d at 678, 681; *Landis*, 2007 WL 2668519, at *5; *Klein*, 2007 WL 1521187, at *4-5.

These decisions are consistent with the Supreme Court's determination that the right to a judicial forum for claims of employment discrimination is not a substantive right. For example, in *Gilmer*, the Supreme Court declared, "[i]t is by now clear that

-7-

statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26. "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only
submits to their resolution in an arbitral, rather than a judicial, forum. *Id.* (quoting *Mitsubishi*, 473 U.S. at 628).

These decisions are also consistent with recent Supreme Court and federal appellate court cases compelling arbitration of statutory claims despite statutory grants of federal jurisdiction. *See, e.g., Gilmer*, 500 U.S. at 20; *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227-28 (1987); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 170 F.3d 1 (1999). All of these cases exemplify the Supreme Court's determination that under statutes establishing a substantive cause of action, Congress did not intend to create a right to federal jurisdiction. *See, e.g.*, *Rodriguez*, 490 U.S. at 483 (quoting *Wilko v. Swan,* 346 U.S. 427, 439 (1953) (Frankfurter, J., dissenting) (compelling arbitration despite a statutory grant of federal jurisdiction stating, "[t]here is nothing in the record before us, nor in the facts of which we can take judicial notice, to indicate that the arbitral system . . . would not afford the plaintiff the rights to which he is entitled)).

In *McMahon*, for example, the Supreme Court compelled

arbitration of a claim under section 10(b) of the Securities and Exchange Act of 1933. *McMahon*, 482 U.S. at 238. Notably, the Court rejected the plaintiffs' argument that the anti-waiver provision voiding waiver of "compliance with any provision" forbids waiver of the provision granting federal jurisdiction. *Id.* at 227-28. The Supreme Court reasoned that the section granting federal jurisdiction does not impose a duty with which persons trading in securities must comply. *McMahon*, 482 U.S. at 228. According to the Court, therefore, arbitration is not a waiver of "compliance with any provision" of the act. *Id.*

In *Rodriguez*, the Supreme Court compelled arbitration of a claim under the Securities Act of 1933. *Rodriguez*, 490 U.S. at 482-83. As in the Securities and Exchange Act of 1933 examined in *McMahon*, this act contained the same anti-waiver provision (forbidding waiver of "compliance with any provision") and also granted federal jurisdiction. *Id.* The plaintiff made the same argument as the Plaintiff in *McMahon*, and the Supreme Court again rejected it. *Id.* In holding that the plaintiff was not entitled to bring his case in federal court under the act, the Court stated "[t]here is nothing in the record before us, nor in the facts of which we can take judicial notice, to indicate that the arbitral system . . . would not afford the plaintiff the rights to which he is entitled. *Id.* at 483 (quoting *Wilko,* 346 U.S. at 439 (Frankfurter, J., dissenting))

In *Gilmer*, the Supreme Court compelled arbitration of a claim arising under the Age Discrimination in Employment Act of 1967 ("ADEA"). *Gilmer*, 500 U.S. at 35. Among other arguments, the Supreme Courts rejected Gilmer's claim that "compulsory arbitration is improper because it deprives claimants of the judicial forum provided for by the ADEA." *Id.* at 29. The Supreme Court reasoned that "Congress . . . did not explicitly preclude arbitration or other nonjudicial resolution of claims" and that Gilmer's argument "ignores the ADEA's flexible approach to resolution of claims" because the "EEOC, for example, is directed to pursue informal methods of conciliation, conference and persuasion ... which suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress." *Id.*

In addition to these Supreme Court cases, a First Circuit opinion in *Rosenberg* is relevant here. In this case, the court considered whether Congress intended to preclude pre-dispute arbitration agreements over claims arising under the Old Workers' Benefit Protection Act ("OWBPA") amendment to the ADEA. *Rosenberg*, 170 F.3d at 12-14. The plaintiff argued that the provision of the act forbidding waiver of "any right or claim" should be interpreted to prohibit an arbitration agreement because it waives a plaintiff's right to a trial. *Id.* at 12. The court held that the OWBPA's reference to "any right" applied to substantive rights,

"or, at any rate, not to the right to proceed in court rather than in arbitration." *Id*. at 13. The court reasoned that "[t]o interpret the OWBPA's reference to 'right' to include procedural rights – and the right to a judicial forum in particular – would be to ignore the Supreme Court's repeated statements that arbitral and judicial fora are both able to give effect to the policies that underlie legislation." *Id.* at 13-14.

Indeed, the Supreme Court has been quite specific that "arbitration is merely a form of trial to be used in lieu of a trial at law." *Rodriguez*, 490 U.S. at 480 (quoting *Wilko*, 346 U.S. at 433); *see, e.g., Gilmer*, 500 U.S. at 30 (rejecting Gilmer's "host of challenges to the adequacy of arbitration procedures"); *Mitsubishi*, 473 U.S. at 631 (expressing a "strong belief in the efficacy of arbitral procedures"). Anything to the contrary expresses "what Judge Jerome Frank called 'the old judicial hostility to arbitration.'" *Rodriguez*, 490 U.S. at 480 (quoting *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir. 1942)).

The *Rosenberg* court also recognized that "Congress has repeatedly rejected legislation that would explicitly bar mandatory agreements to arbitrate employment discrimination claims." *Rosenberg*, 170 F.3d at 10 (citing Civil Rights Procedures Protection Act of 1997, H.R. 983, S. 63, 105th Cong.; Civil Rights Procedures Protection Act of 1996, H.R. 3748, 104th Cong.; Civil

Rights Procedures Protection Act of 1994, H.R. 4981, S. 2405, 103d Cong.) The rejected revision provided:

> [N]otwithstanding any Federal statute of general applicability that would modify any of the powers and procedures expressly applicable to a claim arising under this title, such powers and procedures shall be the exclusive powers and procedures applicable to such claim unless after such claim arises the claimant voluntarily enters into an agreement to resolve such claim through arbitration or another procedure.

*Id.*

Here, Plaintiff has the burden of proving Congress' intent to preclude waiver of a judicial forum for USERRA claims. *See, e.g., Gilmer*, 500 U.S. at 26. Congress indicated that the purposes of USERRA are to "prohibit discrimination against persons because of their service in the uniformed services," 38 U.S.C. § 4301(a)(3), to provide "prompt re-employment" for returning members of the uniformed services, 38 U.S.C. § 4301(a)(2), and to "eliminat[e] or minimiz[e] the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). Notably, there is no mention of arbitration in the text of USERRA.

No provision of USERRA, including § 4302(b), clearly precludes arbitration. Yet Plaintiff fails to provide evidence of congressional intent aside from arguing that his interpretation of the text of §§ 4302 and 4323 is the only reasonable one. This alone may be fatal to Plaintiff's argument. *Gilmer*, 500 U.S. at 29 (rejecting the contention that compulsory arbitration of an ADEA claim was improper, the Supreme Court reasoned "Congress, . . . did

-12-

not explicitly preclude arbitration or other nonjudicial resolution of claims").

In any event, Plaintiff has not convinced this Court that the statutory text is a clear enough expression of intent to prohibit arbitration, particularly in light of evidence that Congress never intended to preclude arbitration of USERRA claims. For example, Congress' explicit endorsement of non-judicial remedies in USERRA (for example, section 4322 authorizing the Secretary to investigate each complaint submitted and "attempt to resolve the complaint") indicates Congress did not intend to preclude arbitration of USERRA claims. *See, e.g., Gilmer*, 500 U.S. 20, 29 (compelling arbitration of an ADEA claim finding that arbitration is consistent with the ADEA because it authorizes out of court dispute resolution). In addition, Congress rejected revisions to employment discrimination statutes, which would have clarified that similar claims may not be arbitrated.

Moreover, the Supreme Court has concluded that under statutes establishing a substantive cause of action, Congress did not intend to create a right to federal jurisdiction through provisions similar to § 4323 of USERRA. *See, e.g., Rodriguez*, 490 U.S. at 483 (quoting *Wilko v. Swan,* 346 U.S. 427, 439 (1953) (Frankfurter, J., dissenting) (compelling arbitration despite a statutory grant of federal jurisdiction stating, "[t]here is nothing in the record before us, nor in the facts of which we can take judicial notice,

-13-

to indicate that the arbitral system . . . would not afford the plaintiff the rights to which he is entitled"). "[T]here is a presumption that Congress was aware of the judicial construction of existing law." *United States v. Professional Air Traffic Controllers Organization*, 653 F.2d 1134, 1138 (7th Cir. 1981). Therefore, had Congress intended to create a right to federal jurisdiction in USERRA, it would not have used the language it did in § 4323.

Notably too, Plaintiff ignores the Supreme Court's determination that arbitral and judicial fora effectuate the policies that underlie legislation such as USERRA. *See, e.g., Gilmer*, 500 U.S. at 30; *Rodriguez*, 490 U.S. at 480; *Mitsubishi*, 473 U.S. at 631. This Court refuses to engage in "the old judicial hostility to arbitration." *Rodriguez*, 490 U.S. at 480 (quoting *Kulukundis*, 126 F.2d at 985). As the *Rosenberg* court held, "[t]o interpret [USERRA's] reference to 'right' to include procedural rights – and the right to a judicial forum in particular – would be to ignore the Supreme Court's repeated statements that arbitral and judicial fora are both able to give effect to the policies that underlie legislation." *Rosenberg*, 170 F.3d at 13-14. For this further reason, USERRA's reference to "any right" cannot apply to substantive rights, "or, at any rate, not to the right to proceed in court rather than in arbitration." *See id.*

For these reasons, this Court finds that Plaintiff has not satisfied his burden to prove that Congress intended to preclude arbitration of USERRA claims. Plaintiff's reliance on the textual arguments of two district court decisions is insufficient to overcome the presumption in favor of arbitration.

To be sure, Plaintiff's interpretation of the broad language in § 4302(b) might be reasonable were this Court to ignore the significant precedent discussed above. The better approach to this statutory language, however, is to limit the application of it to substantive rights and claims under USERRA, or at any rate, to exclude from its ambit the right to proceed in court rather than in arbitration.

Finally, although this Court declines to construct legal arguments for plaintiff, *see Smith v. Town of Eaton,* 910 F.2d 1469, 1471 (7th Cir. 1990), the Court notes that USERRA's House Committee Report provides: "It is the committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law." *Garrett*, 449 F.3d at 679 (citing H.R. Rep. No. 103-65, 1994, as reprinted in U.S.C.C.A.N. 2453.4). This Court agrees with the Supreme Court's instruction relied upon in *Garrett*: "[L]egislative history should rarely be used in statutory interpretation, because only the text of the law has been passed by Congress, not the often-contrived history." *Garrett*, 449 F.3d at 679 (citing *Exxon*

*Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546 (2005). This is especially true given Congress' repeated rejection of a revision to employment discrimination statutes clarifying that arbitration is precluded. *See, e.g., Rosenberg*, 170 F.3d at 10.

For the reasons set forth above, the defendant's motion to compel arbitration and stay proceedings is **GRANTED.** The parties shall proceed with arbitration as provided by their agreement. All proceedings are **STAYED** pending further order of the Court. The Clerk is **ORDERED** to close the case, subject to the right of either party to seek relief from the stay.

**DATED: September 28, 2007**          /s/ RUDY LOZANO, Judge
                                       **United States District Court**